UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN MILITO, | CASE NO. 2:25-cv-1042-JNW |
| Plaintiff, | REMAND ORDER |
| v. | |
| TENCENT AMERICA LLC et al., | |
| Defendant. | |

## 1. INTRODUCTION

This matter comes before the Court on Plaintiff's Motion to Remand. Dkt. No. 27. Having reviewed the motion, Defendant's opposition, Dkt. No. 34, the reply, Dkt. No. 36, and all supporting materials, the Court GRANTS the motion.

## 2. BACKGROUND

Plaintiff John Milito filed this class action in King County Superior Court against Tencent America LLC, Tencent Cloud LLC, Proxima Beta U.S. LLC, and various Doe Defendants, claiming Defendants violated the pay transparency requirements of Washington's Equal Pay and Opportunities Act (EPOA), RCW

REMAND ORDER - 1

49.58.110. Defendants removed the action to this Court, and Milito asserts that the matter was improperly removed. The Court reviews the statutory and factual background.

**2.1 Statutory background: the EPOA mandates wage disclosure in job postings.**

Washington State passed its first equal pay legislation, the Equal Pay Act, in 1943, and amended it for the first time in 2018, at which time it became known as the EPOA. *See* RCW 49.12.175; 49.58.005. The Washington Legislature found that "despite existing equal pay laws, there continue[d] to be a gap in wages and advancement opportunities among workers in Washington, especially women." RCW 49.58.005. The law was updated "to address income disparities, employer discrimination, and retaliation practices, and to reflect the equal status of all workers in Washington state." *Id.*

In 2019, the EPOA was further updated to address discriminatory hiring practices by prohibiting employers "from seeking the wage or salary history of an applicant for employment in certain circumstances," and by requiring "an employer to provide wage and salary information to applicants and employees" upon request, although only "after offering the applicant the position." RCW 49.58.005; *see also* RCW 49.58.100, -.110.

In 2022, the Legislature again amended the EPOA by modifying RCW 49.58.110 to require employers to proactively disclose compensation information when a position is posted as available. This "allows a discussion at the start of the process instead of after an offer has been made, which will increase the ability to

negotiate pay." Dkt. No. 1-4 (Compl.) ¶ 5 (quoting H.B. Rep. ESSB 5761, at 2 (Wash. 2022)).) The Legislature was also concerned that "'[m]any candidates spend hours going through rounds of interviews only to find out they can't live on the offered pay.'" *Id.* (quoting S.B. Rep. ESSB 5761, at 3 (Wash. 2022)).

The EPOA now states, in relevant part, that an employer must "disclose in each posting for each job opening the wage scale or salary range, and a general description of all of the benefits and other compensation to be offered to the hired applicant." RCW 49.58.110(1). It is this provision that Milito claims Defendants violated.

**2.2    Factual background.**

Milito lives in Washington and applied for a job opening Defendants offered in Washington. Compl. ¶¶ 15, 27. Milito alleges "[t]he posting for the job opening Plaintiff applied to did not disclose the wage scale or salary range" being offered. *Id.* ¶ 28. He alleges that he and the members of a proposed class of similarly situated individuals "lost valuable time applying to a position for which the posting did not disclose the wage scale or salary range." *Id.* ¶¶ 35, 39. But Milito alleges only that he applied for the job, not that he was qualified for the position, that he received any specific response, or that he received an interview offer.

Milito's complaint is virtually identical to numerous other putative class-action lawsuits filed by plaintiffs represented by the same counsel and subsequently removed to and remanded by this courts in this district. And according to

Defendants, Milito has filed over fifty similar EPOA actions in King County Superior Court since June 2024. Dkt. No. 34 at 9 n.2 (listing cases).

## 3.  DISCUSSION

### 3.1  Plaintiff lacks Article III standing.

The Court finds that it lacks subject matter jurisdiction over this matter because Milito does not have Article III standing, having failed to identify a concrete injury from Defendants' failure to provide statutorily required salary information.

"Under Article III, the Federal Judiciary is vested with the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'" *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011). "Among other things, that limitation requires a plaintiff to have standing." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 295–96 (2022). If a plaintiff lacks Article III standing, the Court does not have subject matter jurisdiction. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975).

The standing inquiry begins with a simple principle: "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* at 423 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiff bears the burden of establishing each of these elements "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504

U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]" *Id.*; *accord Tingley v. Ferguson*, 47 F.4th 1055, 1066 (9th Cir. 2022).

This case falls into a category of lawsuits where standing hinges on the violation of a statutory right. "[T]he Supreme Court made clear that a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Robins v. Spokeo, Inc. (Spokeo II)*, 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins (Spokeo I)*, 578 U.S. 330, 341 (2016) as revised (May 24, 2016)). To establish a concrete injury, "the plaintiff must allege a statutory violation that caused him to suffer some harm that 'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Id.* (quoting *Spokeo I*, 578 U.S. at 340).

"Although we often think of 'tangible' injuries as the basis of this jurisdictional requirement, the Supreme Court has confirmed that 'intangible injuries can nevertheless be concrete.'" *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 679 (9th Cir. 2021) (quoting *Spokeo I*, 578 U.S. at 340). While "[t]he omission of statutorily required information can constitute a distinct, concrete injury," "not 'every minor inaccuracy reported in violation of [a statute] will cause real harm or present any material risk of real harm.'" *Id.* (quoting *Spokeo II*, 867 F.3d at 1116). "[A]n intangible injury may be concrete if it presents a material risk of tangible harm or 'has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' like common law

REMAND ORDER - 5

torts or certain constitutional violations." *Phillips v. United States Customs & Border Prot.*, 74 F.4th 986, 991 (9th Cir. 2023) (quoting *Spokeo I*, 578 U.S. at 340-41).

"To determine whether the violation of a statute constitutes a concrete harm, we engage in a two-part inquiry." *Magadia*, 999 F.3d at 679. "We first consider 'whether the statutory provisions at issue were established to protect . . . concrete interests (as opposed to purely procedural rights).'" *Id.* (quoting *Spokeo II*, 867 F.3d at 1113). "If so, we then assess 'whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests.'" *Id.* (quoting *Spokeo II*, 867 F.3d at 1113).

Although the EPOA protects concrete interests of job applicants, Milito has failed to show that the alleged violation caused actual harm or presented a material risk of harm to those interests. The Court reviews its two-part analysis, below.

First, the salary disclosure requirement in the EPOA was established to protect concrete, non-procedural rights for job applicants and employees. As discussed above, Legislature amended the EPOA to address the wage gap and income disparities that exist affecting workers in Washington. RCW 49.58.005. The EPOA expressly states that "the legislature intends to require an employer to provide wage and salary information to applicants and employees." RCW 49.58.005(4). To promote this goal, the 2019 Amendments to the EPOA required employers to provide wage and salary information to applicants upon request, but only "after offering the applicant the position." RCW 49.58.005, -.100-.110. Then in 2022, the Legislature amended the EPOA to increase transparency by requiring

proactive disclosure of wage and salary information to "allow[] a discussion at the start of the process instead of after an offer has been made, which will increase the ability to negotiate pay." H.B. Rep. ESSB 5761, at 2. This change was designed to avoid harm to those who "spend hours going through rounds of interviews only to find out they can't live on the offered pay." S.B. Rep. ESSB 5761, at 3. Read together, this legislative history confirms that the EPOA's procedural requirement of disclosure was established to protect applicants by arming them with sufficient information to ensure fair and equitable pay negotiations, and to avoid wasting time interviewing for positions whose pay would never be adequate.

Second, Milito has failed to show how Defendants' nondisclosure caused him actual harm or material risk of harm. Milito alleges that as a result of the missing pay scale and wage range information, he "lost valuable time," was unable to negotiate, and was "unable to evaluate the pay and benefits for the position and compare it to other available positions in the marketplace[.]" Compl. ¶¶ 32–35. But these allegations fail to show any actual harm against which the EPOA intends to protect. Nowhere has Milito alleged that he was offered an interview or that he engaged in any pay negotiations. All Milito alleges is that he applied to the job. And Milito does not even allege he was qualified for the position. His only identified injury is the time he "lost" in submitting the application, but this is not an injury that the EPOA was designed to prevent. As Judge Rothstein concluded in *Floyd v. Insight Glob. LLC,* "[a] job posting that does not contain compensation information is a technical violation, but it does not harm or create a material risk of harm to any individual's concrete interest" because "[a] nominal applicant with no interest in the

REMAND ORDER - 7

position will neither receive a benefit from early pay disclosure nor be harmed by the lack thereof." No. 23-CV-1680-BJR, 2024 WL 2133370, at *7 (W.D. Wash. May 10, 2024), amended on reconsideration, No. 23-CV-1680-BJR, 2024 WL 3199858 (W.D. Wash. June 26, 2024). Defendants invocation of Milito's conclusory phrase "economic and non-economic harm" changes nothing. Labels do not create concrete injury where the underlying facts do not support one.

As was the case in *Floyd*, Milito has failed to identify a concrete and particularized injury sufficient to satisfy Article III standing. Because the Court lacks subject matter jurisdiction, the Court GRANTS the Motion to Remand.

The Washington Supreme Court's recent decision in *Branson v. Washington Fine Wine & Spirits, LLC*, 574 P.3d 1031 (Wash. 2025), does not disturb the Court's decision. There, the Washington Supreme Court addressed the question of what a plaintiff must prove to be considered a "job applicant" under RCW 49.58.110(4)—and specifically, whether the applicant must prove they are a bona fide applicant. *Branson*, 574 P.3d at 1034. The Washington Supreme Court held:

> A job applicant need not prove they are a 'bona fide' applicant to be deemed a 'job applicant.' Rather, in accordance with the plain language of RCW 49.58.110(4), a person must apply to any solicitation intended to recruit job applicants for a specific available position to be considered a 'job applicant,' regardless of the person's subjective intent in applying for the specific position.

*Id.* at 1040.

The *Branson* court did not address standing—neither federal nor statutory—and therefore does not change this Court's Article III standing analysis. The *Branson* decision clarifies that a plaintiff does not have to prove they are a "bona

fide" or "good faith" applicant to qualify as a "job applicant" that can sue to obtain remedies under the statute. *Id.* But a plaintiff must still show an injury-in-fact for Article III purposes. *Spokeo II*, 867 F.3d at 1112. Milito has failed to plead such an injury. Because a lack of Article III standing implicates the Court's subject matter jurisdiction, *see Warth*, 422 U.S. at 498, this case will be remanded to King County Superior Court pursuant to 28 U.S.C. § 1447(c). And because Milito lacks standing, this Court does not have subject matter jurisdiction to address the parties' additional arguments.

This Court's conclusion is consistent with the uniform approach of every judge in this district to have considered the issue. In multiple cases involving nearly identical EPOA claims, courts in this district have held that plaintiffs who do not allege bona fide applicant status, an interview offer, or engagement in pay negotiations lack Article III standing. *See, e.g.*, *Floyd v. Photon Infotech Inc.*, No. C24-01372-KKE, 2025 WL 3442736 (W.D. Wash. Dec. 1, 2025); *Eggleston v. Bruckner Truck Sales Inc.*, No. C25-1467-JLR, 2025 WL 3153503 (W.D. Wash. Nov. 12, 2025); *Hill v. Les Schwab Tire Centers of Washington LLC*, No. 24-CV-425-BJR, 2025 WL 3062646, at *3 (W.D. Wash. Oct. 31, 2025). This Court knows of no case in this district reaching a contrary result.

**3.2   The futility exception does not apply.**

Because Milito lacks Article III standing, the proper remedy is remand, but Defendants argue in the alternative that the Court should apply the futility exception and dismiss instead. Dkt. No. 34 at 21–23. The Court declines. The

futility exception is difficult to reconcile with 28 U.S.C. § 1447(c)'s plain language, and it is questionable whether it remains good law. *See Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1197–98 (9th Cir. 2016). Even assuming it remains valid, the exception is "narrow" and applies only where there is "absolute certainty" that a state court would dismiss the action following remain. *Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1189–90 (9th Cir. 2022). Defendants have not made that showing. Washington courts are not bound by Article III, *Polo*, 833 F.3d at 1196, and under *Branson*, Milito need not prove bona fide applicant status to seek remedies under the EPOA. 574 P.3d at 1040. Dismissal in state court is not an absolute certainty, and thus the futility exception does not apply.

## 4. CONCLUSION

The Court finds that Milito has failed to allege an injury to a concrete interest sufficient to satisfy Article III standing. The Court therefore lacks subject matter jurisdiction, and GRANTS the Motion to Remand. The Court REMANDS this matter to the King County Superior Court, effective fourteen (14) days from the date of this Order. *See* LCR 3(i). Defendants' Motion to Dismiss, Dkt. No. 28, and Defendants' Motion for Jurisdictional Discovery, Dkt. No. 30, are DENIED as MOOT.

Dated this 17th day of December, 2025.

Jamal N. Whitehead
United States District Judge